| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | <u>FOR ONLINE PUBLICATION ONLY</u> |

LOUISE PANTELEONE, IAN PANTELEONE, LINDA PANTELEONE, et al.,

                            Plaintiffs,

- versus -

ENVIRONMENTAL ENGINEERING AND CONTRACTING, MARK ZEKO, JOHN SHAFFER, DOES 1-25,

                            Defendants.

<u>AMENDED MEMORANDUM AND ORDER</u>
12-CV-5415 (JG)

A P P E A R A N C E S:

        GACOVINO, LAKE & ASSOCIATES
        270 West Main Street
        Sayville, NY 11782
By:    Robert J. Dallas
        *Attorneys for Plaintiffs*

        WUERSCH & GERING LLP
        100 Wall Street, 10th Fl.
        New York, NY 10005
By:    Francisco Di Pietro
        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        Louise, Ian and Linda Panteleone commenced this action against defendants Environmental Engineering and Contracting ("EEC"), Mark Zeko, John Shaffer, and unidentified others asserting claims of (1) professional negligence; (2) negligence; (3) breach of contract; and (4) breach of the covenant of good faith and fair dealing. EEC, Zeko and Shaffer now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the claims are barred by the statute of limitations. For the reasons set forth below,

the motion is denied to the extent that plaintiffs allege that the defendants charged an excessive amount for the work performed.  In all other respects the motion is granted.

BACKGROUND

The facts set forth here are drawn from the plaintiffs' complaint, and are assumed to be true for the purposes of this motion.

The law firm of Girardi & Keese (referred to here as "the law firm") filed a toxic tort action against ExxonMobil ("Exxon") in 2005 on behalf of the plaintiffs in this case,[1] alleging personal injuries sustained as a result of toxic exposure.  Compl. ¶ 1.  The lawsuit alleged that Exxon caused pollution in and around the Greenpoint section of Brooklyn, New York.  The law firm retained EEC on behalf of plaintiffs to "conduct research, sampling, and testing in and around the alleged contaminated Greenpoint area" to support the litigation against Exxon and other defendants.  Compl. ¶ 7.  Zeko and Shaffer are employees of EEC.

In 2006, EEC agreed to assist plaintiffs in developing and building their case against Exxon by testing air and water samples in Greenpoint.  Compl. ¶ 8.  The costs were borne by plaintiffs, who allege that this created "a professional relationship between [plaintiffs] and [defendants]" that lasted from 2006 until the underlying claim was settled in 2012.  Compl. ¶¶ 9-10, Mot. in Opp. pp. 3-4.  Also, it was "understood that the information and tests were meant to be confidential as part of the [plaintiffs'] work product."  Compl. ¶ 10.

During the environmental testing Zeko disseminated information related to the testing that was being conducted.  Compl. ¶ 14.  He also provided an outside attorney with "confidential work product documents" without the approval of the law firm or plaintiffs.  Compl. ¶¶ 15-18.  The outside attorney shared the confidential work product information with

---

[1] The complaint states that it is brought by the named plaintiffs in their "individual and representative capacities and on behalf of the class of all persons similarly situated."  Compl. at 1.  However, plaintiffs clarified at oral argument that they are no longer seeking to pursue a class action.

the media. Compl. ¶ 18. In May 2008, plaintiffs learned of the dissemination of the information when defendants were presented with a subpoena for the test results. Compl. ¶¶ 19-20. After learning this, plaintiffs moved for a protective order for the documents, asserting that they constituted work product, and the motion was granted by the state court. Compl. ¶ 22.

Plaintiffs allege that the defendants in the Exxon litigation were aware that Zeko was disseminating confidential information, Compl. ¶ 4, and this compromised the usefulness of the work performed by EEC up until that point, Compl. ¶ 24. Plaintiffs paid $727,269.48 for the work performed by EEC and the other defendants in this case.

## DISCUSSION

*A.    The Standard of Review*

Under the Federal Rules of Civil Procedure, a complaint "must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that does not do so will be dismissed for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010).

For decades, the oft-cited standard for assessing the sufficiency of a complaint was the Supreme Court's statement of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), however, the Supreme Court "retired the *Conley* no-set-of-facts test," *id.* at 1944, in place of a new standard for addressing the sufficiency of a complaint under Rule 8(a).

Under the new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570.) This standard requires factual allegations that, taken as true, demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If a complaint allows a court to infer no more than "the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555). A complaint must offer more than "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

In assessing whether a complaint meets the plausibility standard, a court should first identify any allegations in the complaint that "are no more than conclusions" and therefore "are not entitled to the assumption of truth." *Id.* at 1950; *see also Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010). Second, a court should assume that any remaining well-pleaded allegations are true and "then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see also Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 824 (2010).

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove. Fed.R.Civ.P. 8(c)(1). However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.

*McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004); *see also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1226 (3d ed. 2004)." *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

    B.    *The Timeliness of the Claims*

Defendants contend that plaintiffs' claims are subject to the three-year limitations period for non-medical malpractice claims set forth in New York Civil Practice Law and Rules ("CPLR") § 214(6). Plaintiffs argue that the six-years limitations period set forth in CPLR § 213(2) for actions alleging breach of contract is applicable here, not the three-year statute. The issue raised by the motion is whether plaintiffs' claims allege malpractice by professionals. For the most part, I conclude that they do.

CPLR § 214(6) states that "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort" is subject to a three-year state of limitations. Prior to a 1996 amendment to that provision, the statute of limitations applicable in a nonmedical malpractice action depended on the proposed remedy, not on the theory of liability. *See, e.g.*, *Santulli v. Englert, Reilly & McHugh, P.C.*, 78 N.Y.2d 700, 708 (1992). "These cases held that liability would not have existed between the parties without the contractual relationship and that there was an implied agreement to perform professional services using due care." *In re R.M. Kliment & Frances Halsband, Architects*, 3 N.Y.3d 538, 541 (2004) (citing *Santulli*, 78 N.Y.2d at 707; *Sears, Roebuck & Co. v. Enco Assocs.,* 43 N.Y.2d 389, 396 (1977)). Thus, courts applied the six-year statute of limitations on the theory the plaintiffs were alleging negligent performance of contract in "contractual" malpractice cases. *See, e.g., Sears, Roebuck & Co.*, 43 N.Y.2d at 395-396. Plaintiffs were permitted to maintain a professional malpractice action under a breach of

contract theory subject to the permissive six-year statute of limitations, but they were limited to the damages available in a contract action if the three-year malpractice limitations period had expired. *See Santulli*, 78 N.Y.2d at 709.

The 1996 amendment changed all that. In the eyes of the legislature, pre-amendment case law had "'abrogate[ed] and circumvent[ed] legislative intent' by allowing actions that were technically malpractice actions to proceed under a six-year contract statute of limitations.'" *In re R.M. Kliment & Frances Halsband, Architects*, 3 N.Y.3d 538, 541 (2004) (quoting Revised Assembly Mem. in Support, Bill Jacket, L 1996, ch. 623). Under the amended provision, "where the underlying complaint is one which essentially claims that there was a failure to utilize reasonable care or where acts of omission or negligence are alleged or claimed, the statute of limitations shall be three years if the case comes within the purview of CPLR 214(6), regardless of whether the theory is based in tort or in a breach of contract." *Id.* at 541-42 (internal quotation marks omitted). Thus, even if a plaintiff alleges a breach of an express contractual promise, § 214(6)'s three-year limitations period applies as long as the defendant is a professional who would be expected to accomplish the promised action by using due care even in the absence of the contractual obligation. *Id.* at 542 (making ordinary professional obligations express terms of an agreement does not remove a claimed breach of the obligation "from the realm of negligence").

As the New York Court of Appeals has observed, the 1996 amendment to § 214(6) "ended one quandary but exposed another: who are the 'professionals' whose misfeasance toward clients is subject to the shortened limitations period?" *Chase Scientific Research, Inc. v. NIA Group*, 96 N.Y.2d 20, 25 (2001); *see also id.* at 28 ("Here, that task is

6

complicated by the fact that, in CPLR 214(6), 'malpractice' is undefined and 'professional' unmentioned.").

Defendants argue that this case is a malpractice claim because plaintiffs allege, *inter alia*, that defendants failed to keep the research from their environmental tests confidential and thus breached the professional duty of care. And because this is a malpractice case, the argument continues, plaintiffs' complaint is time-barred by the three-year state of limitations. Specifically, plaintiffs allege that they discovered the breach of confidentiality that lies at the heart of defendants' alleged malfeasance in May 2008, when they were presented with a subpoena for the test results defendants had disclosed. Compl. ¶ 19. The three-year statute of limitations governing professional negligence claims based on that conduct accrued at that time. Therefore, the period to assert the professional negligence claims expired no later than May 2011. Since the action was filed on September 25, 2012, the defendants conclude that any professional negligence claims are time-barred.[2]

Plaintiffs argue that defendants are not professionals, but right off the bat their argument runs up against their own allegations in the complaint. They specifically allege that defendants were hired as professionals in environmental consulting, and the malpractice claim in the complaint is explicitly based on defendants' status as "professionals." Compl. ¶¶ 10, 27. Plaintiffs further allege that defendants failed to perform the services for which they were hired with the applicable "professional duty[,] skill, diligence, prudence, and care of keeping the information confidential." Compl. ¶¶ 10, 27. And plaintiffs claim that the parties entered into a professional relationship of trust and confidence. Compl. ¶¶ 10, 13, 27. As mentioned,

---

[2] Defendants do not address plaintiffs' remaining claims, which allege that defendants over-charged for their services and charged plaintiffs for services not performed pursuant to the terms and conditions of the agreement. *See* Compl. § 51.

7

plaintiffs now claim that, despite those allegations, defendants are not professionals. Mot. in Opp. at p. 8. Recognizing that this argument is in tension, to put it mildly, with the facts they alleged in their complaint, plaintiffs argue that they are permitted by Fed. R. Civ. P. 8(d)(3) to allege inconsistent claims. Mem. in Opp. at pp. 5-6.

First, plaintiffs misapprehend the applicability of Rule 8(d)(3) to their argument. They assert that "Defendants are asking the Court to consider them professionals simply because Plaintiffs stated in their Complaint that Defendants owed Plaintiffs a professional duty. … However, Plaintiffs went on in their Complaint to aver that Defendants breached an ordinary duty as well as breached the covenants of good faith and fair dealing as well as multiple contracts …" Mem. in Opp. At 5. But those are simply multiple theories of liability, not inconsistent ones. Conduct that breaches a professional's duty of care can also breach that professional's contract with the plaintiff, and under New York law the shorter, three-year limitations period applies to all of those claims even if they are alleged as breaches of contract and even if the breach of care violates an expressly-stated contractual obligation.

In any event, plaintiffs' attempted disavowal of their own factual pleadings doesn't alter my conclusion that their claims fall squarely within § 214(6). The qualities of professionals include "extensive formal learning and training, licensure and regulation indicating a qualification to practice, a code of conduct imposing standards beyond those accepted in the marketplace and a system of discipline for violation of those standards." *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 29 (2001). "Additionally, a professional relationship is one of trust and confidence, carrying with it a duty to counsel and advise clients." *Id.* This definition "implements the Legislature's intention that the shortened statute of limitations benefit a discrete group of persons." *Id*.

Environmental engineers and consultants of course fit this description. They conduct site assessments in support of real estate transactions; they design, operate and maintain pollution control systems; they assist in environmental permitting activities; they conduct testing of properties to determine if there is contamination; they are integrally involved in the remediation of contaminated properties; they assist, as they did in the underlying action here, in gathering, organizing and presenting facts related to pending environmental litigation. *See generally* Chris Mattison, "Professional Liability of Environmental Consultants," *For the Defense*, March 1998, at 34.[3] They are considered professionals by other courts. *See, e.g.*, *Tyree Org., Ltd. v. Cashin Assoc.*, No. 12361-05, 2007 N.Y. Misc. 3d 1220(A), *6 (N.Y. App. Div. 2007) (noting that an environmental consultant working within an engineering firm is a professional and subject to the standards of professional conduct of engineers); *Watco v. Pickering Envtl. Consultants, Inc.*, No. W2006-00978-COA-R3-CV, 2007 WL 1610093 364, *19, *22 (Tenn. Ct. App. 2007) (considering a geologist and engineer who performed a Phase I environmental assessment to be environmental professionals and holding them to a professional standard of care); *Bonnieview Homeowners Ass'n LLC v. Woodmont Builders, LLC*, No. 03-cv-4317 (DRD), 2006 WL 1982882, * (D.N.J. 2006) (recognizing that "an environmental consultant must conform to standard of care possessed by members of the profession in good standing . . . "); *Grand Street Artists v. Gen. Elec. Co.*, 19 F. Supp. 2d 242, 248 (D.N.J. 1998) ("[I]t is well settled that an environmental consultant must conform to a standard of care possessed by members of the profession in good standing . . . .").

---

[3] The Environmental Protection Agency ("EPA") defines an environmental professional as "a person who possesses sufficient specific education, training, and experience necessary to exercise professional judgment to develop opinions and conclusions regarding conditions indicative of releases or threatened releases . . . on, at, in, or to a property . . ." 40 C.F.R. § 312.10(1) (2006).

9

EEC, Zeko[4] and Shaffer were hired as environmental consultants by plaintiffs to investigate contamination in Greenpoint because of their particularized knowledge and expertise. They were tasked with providing accurate environmental assessments for plaintiffs' use in litigation. The nature of their profession and the specific character of the services they were retained to provide – assistance in environmental litigation – created a relationship of trust and confidence. All of these reasons no doubt contributed to the plaintiffs' own unambiguous characterization of them as professionals in the complaint before me. I conclude for purposes of the application of CPLR § 214(6) that defendants are professionals and that they entered into a professional relationship with plaintiffs.

That doesn't conclude the inquiry, however. I still must determine which of plaintiffs' claims are essentially malpractice claims (and thus time-barred under CPLR 214(6)) and which are not.

Professional malpractice is a species of negligence under New York law. *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000). For purposes of CPLR 214(6) malpractice means the "negligence of a member of a profession in his relations with his client." *Cubito v. Kreisberg*, 419 N.Y.S.2d 578, 580 (1979). To prevail on a professional malpractice claim, a plaintiff must demonstrate the elements of negligence, and that the breach of duty was by a professional in a "departure from accepted standards of practice." *See VTech Holdings, Ltd. v. Pricewaterhouse Coopers, LLP,* 348 F.Supp.2d 255, 262 (S.D.N.Y. 2004).

Plaintiffs repeatedly allege the following list of grievances in their complaint: defendants (1) failed to diligently finish the tests results in a timely manner; (2) failed to keep the information confidential; (3) released information for another's commercial gain to the detriment

---

[4] The complaint identifies Shaffer as a principal of EEC; at oral argument plaintiffs' counsel identified Zeko as a geologist.

10

of the plaintiffs; (4) failed to gain permission from the plaintiffs to discuss the confidential research with others; (5) failed to protect information under work product; (6) charged plaintiffs an excessive amount for the work performed; and (7) charged plaintiffs for services not performed pursuant to the terms and conditions of the agreement. Compl. ¶¶ 28, 35, 51.

The nature of defendants' relationship with and services provided for plaintiffs gave rise to a duty of reasonable care that is independent of their contractual obligations. Defendants were hired to "conduct confidential research" for plaintiffs as their "consultants in the prosecution of claims for personal injuries arising out of environmental contamination" in Greenpoint. Compl. ¶ 26. Defendants' environmental research was intended to assist plaintiffs in their lawsuit against Exxon, and they were part of plaintiffs' legal team. Their investigative and consultative services required a relationship of trust and confidence.

With this in mind, I conclude that the following claims against defendants are essentially malpractice claims and barred by the three-year statute of limitations: defendants (1) failed to diligently finish the test results in a timely manner ; (2) "failed to keep the information confidential"; (3) "released information for another's commercial gain to the detriment of the [plaintiffs]"; (4) "failed to gain permission from the [plaintiffs] to discuss the confidential research with others; and (5) "failed to protect information under work product;" and (6) and charged plaintiffs for services not performed pursuant to the terms and conditions of the agreement. Compl. ¶ 51. Whether the obligations to conduct the environmental research diligently and in a timely manner, and to keep the results confidential, are implicit in the particular undertaking or expressly identified as a contractual term, they are in essence claims that defendants violated an ordinary professional obligation that inhered in their professional relationship with plaintiffs. Those claims are time-barred by CPLR 214(6).

Further, plaintiffs' claim for breach of the covenant of fair dealing and good faith is also time-barred as being essentially a professional malpractice claim. Plaintiffs' vacuous complaint has not persuaded me that this claim describes anything more than defendants' breach of professional duty through the dissemination of confidential research.

Plaintiffs's remaining claim sounds only in contract and is not barred by the six-year statute of limitations. The claim that defendants charged plaintiffs an excessive amount for the work performed is not (at least not as a matter of law at this juncture) essentially an allegation of professional malpractice.

To state a cognizable claim for breach of contract, a plaintiff must allege that (1) a valid agreement was formed; (2) plaintiff performed or would have performed his obligations under the agreement; (3) defendant breached the agreement through no fault of plaintiff; and (4) plaintiff was damaged as a result of the breach. *See Enercomp, Inc. v. McCorhill Publ'g, Inc.*, 873 F.2d 536, 542 (2d Cir. 1989). Plaintiffs allege that they retained defendants to perform environmental tests, that they paid defendants on two separate occasions for those tests, and that defendants breached the contract by charging an excessive amount and charging for their services. Accepting these allegations as true, plaintiffs have sufficiently alleged that contractual provisions were breached by defendants in a manner that does not constitute professional negligence.

The heart of plaintiffs' complaint is the defendants' alleged malfeasance in disseminating confidential information. Given the central theory of their lawsuit, it is unclear to me whether they will now pursue their single remaining claim of breach of contract. If they do intend to pursue that claim, they are respectfully ordered to file an amended complaint on or before July 26, 2013. The amended complaint shall include more specifically what the parties'

contract provided for with regard to payment and how defendants breached that agreement. A status conference will be held on August 1, 2013 at 11:30 a.m. in courtroom 6C south.

## CONCLUSION

For the reasons stated above, defendants' motion is denied to the extent that plaintiffs allege that the defendants charged an excessive amount for the work performed. In all other respects the motion is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 2, 2013
       Brooklyn, New York